327 So.2d 168 (1976)
LaDorothy LOGAN, Plaintiff-Appellant,
v.
E. L. SWIFT et al., Defendants-Appellees.
No. 12810.
Court of Appeal of Louisiana, Second Circuit.
February 9, 1976.
*169 Huckaby, Piper & Brown by Frank E. Brown, Jr., Shreveport, for plaintiff-appellant.
John Gallagher, Roland J. Achee, Neil Dixon, Shreveport, for defendants-appellees.
Before BOLIN, MARVIN and SMITH, JJ.
BOLIN, Judge.
Plaintiff sues for damages for personal injuries inflicted by a Shreveport policeman who was attempting to arrest her for criminal mischief. Defendants are E. L. Swift, the policeman; T. P. Kelly, Chief of Police; George W. D'Artois, Commissioner of Public Safety; and the City of Shreveport. Plaintiff and defendant policeman are both members of the black race. Judgment below rejected her demands and she appeals. We affirm.
About 1:00 p. m., on a school day, the policeman was on patrol in the area of a Shreveport high school when he stopped at a pool hall to question teenagers to determine why they were not in school. Before departing he saw plaintiff sitting in a window of the pool hall on the second floor of the building. Swift called to her and asked how old she was, to which she replied "thirteen". The officer then went inside and asked the owner, Preston Mays, if he knew he had a juvenile on the premises.
Mays testified Swift asked him about plaintiff's age and he told the officer he thought she was as old as the officer because she had a child in school. He informed Swift he could go and talk to plaintiff. Mays testified plaintiff refused to talk to Swift; that the officer told plaintiff she was under arrest, to which she replied that he couldn't arrest her; that Swift attempted to place handcuffs on her but she grabbed them and threw them out the window; that he then reached for his "billy club" or night stick and plaintiff knocked it from his hand and it rolled across the floor. Mays said Swift and plaintiff wrestled and the officer removed his pistol from its holster and struck plaintiff on the head with it.
Swift says when he asked plaintiff how old she was in the pool hall she again responded"thirteen". He then asked her for an identification card and she said "catch me later". At that time he told her she was under arrest for criminal mischief [La.R.S. 14:59] and that he was taking her "down", but she refused to go with him. He attempted to handcuff her but she grabbed the handcuffs away from him and threw them out the window. He testified that in the ensuing scuffle she grabbed his night stick and hit him with it and that it was necessary to hit her with his pistol to subdue her.
Plaintiff testified she never hit Swift with the night stick and that Swift hit her six or more times with the pistol.
A number of other witnesses who were in the pool hall testified essentially in accord with the testimony of the pool hall owner as to the scuffle. None of these witnesses corroborated the officer's testimony that plaintiff hit him with the night stick. These witnesses also generally corroborated plaintiff's testimony that the officer struck her with the pistol more than once.
Although the evidence is conflicting as to the number of times plaintiff was struck with the pistol, a .38 caliber revolver, the policeman admitted hitting her twice. Photographs and the hospital report show plaintiff suffered two blows on the head which rendered her unconscious. She was *170 bleeding from these wounds when Swift called for an ambulance and for other officers to come to the scene. Plaintiff was taken to the hospital where she was treated and held overnight for observation. She returned to the doctor several times and complains that she continues to suffer from headaches and dizziness. She did not suffer any major residual disability.
Plaintiff is 26 years old, five feet, four inches tall, and weighs 125 pounds. Swift is six feet tall, weighs 170 pounds, and has been trained in basic police procedures.
The trial judge found Swift was justified in using the force he did since "it was obvious he had to do this or he would never have brought her under physical control." The lower court predicated this finding on the premise that the arrest was lawful under Louisiana Revised Statutes 17:221, et seq., which requires school attendance of children seven through fifteen, and Section 28-19 of the Shreveport City Code regulating the operation of billiard halls in Shreveport.
Officer Swift was well within the performance of his duties when he attempted to question plaintiff. He was in uniform and was near his marked patrol car when she first saw him. She undoubtedly knew he was a police officer. Plaintiff violated La.R.S. 14:108 in that she resisted an officer by her intentional opposition or resistance to, or obstruction of, the policeman acting in his official capacity and by refusing to give her name and make her identity and age known to the arresting officer.
The determination that the officer was making a lawful arrest does not answer the question of whether the officer used excessive force. Louisiana Code of Criminal Procedure Article 220 provides:
A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance of the person being arrested or detained. (Emphasis supplied)
We agree the officer had to use some force under the circumstances, but we are required to weigh the force used against the statutory test of reasonableness.
The evidence preponderates that the following sequence of events occurred: The policeman placed his hands on plaintiff and informed her she was under arrest and would have to come with him; plaintiff pulled away from him; the officer got the handcuffs to place on plaintiff, whereupon she grabbed them and threw them out the window; a scuffle ensued and plaintiff got the policeman's night stick and struck Swift with the stick one or more times; during the scuffle Swift struck plaintiff on the head twice with his pistol; plaintiff was rendered unconscious and taken to the hospital.
We find that in each action taken by the policeman in the sequence of events set forth above he used reasonable force in order to make a lawful arrest. The unfortunate striking of plaintiff by Swift with a pistol was merely the culmination of a chain of events which was caused entirely by the unreasonable conduct of plaintiff and not Swift. This is not a case where the policeman merely informed plaintiff of her arrest on a misdemeanor and then struck her twice on the head with a pistol because she initially refused to submit to such arrest.
We find there is sufficient evidence to support the ruling of the trial court and it is accordingly affirmed at appellant's cost.
MARVIN, J., dissents and assigns written reasons.
MARVIN, Judge (dissenting).
The officer in this case testified:
"Q Did Miss . . . Logan ever hit you with that night stick . . ."

*171 "A She tried to.
"Q That's not what I asked you, sir?
"A Well, I don't recall whether
* * * * * *
"Q Did Miss . . . Logan hit you with that night stick, sir?
"A On the hand, probably on my hand, yes.
* * * * * *
"Q So now when you hit her with your pistol she had the night stick in her hand?
"A Either she had it then, or it fell to the floor, I don't know. I let it go after I saw I couldn't get it back.
* * * * * *
"Q At the time you pulled your pistol, Officer Swift what was she doing?
"A We had one another like this, see (indicating)
"Q You were embracing each other?
"A Well fighting, you know fighting, whatever you want to call it.
"Q And you pulled your pistol out while you had her embraced, and hit her in the head?
"A Well, we were fighting and I hit her.
* * * * * *
"Q . . . could you have subdued her without hitting her in the head with a gun?
"A Maybe if she had stopped fighting, but if she had kept on fighting I would have had to hit her either with my fist or my gunone of the two." (Emphasis supplied).
All other witnesses testified that the night stick went rolling across the floor during the "tussle" between Miss Logan and the officer. All witnesses testified that it was after the night stick was on the floor [out of the picture, so to speak] when the officer pulled his pistol and used it as a bludgeon. Moreover, the testimony of the officer does not suggest that he considered plaintiff's actions as endangering his life.
In addition to the basic police academy training program mentioned by the majority, Officer Swift admits he was a Viet Nam war veteran who had been trained in methods of hand-to-hand combat. His testimony expressly states an alternative course of action to hitting her with the pistol ". . . [I] had to hit her with either my fist or my gun."
Considering the six, size, weight, military and police training of the individuals, and considering the officer's testimony of one alternative ("fist or gun"), the only reasonable conclusion is the officer could have subdued the resisting, but unarmed female by hitting her with his fist, by throwing her to the floor or otherwise pinning her down, and without resorting to a bludgeon.
Also under Art. 219, La.C.Cr.P., the officer could have called upon the pool hall owner or as many other persons as he considered necessary to aid him in making the arrest.
Under the circumstances as I view the record, there is no evidence to support the conclusion that the officer used reasonable force, even assuming arguendo that he struck her only twice with the pistol.
"Louisiana jurisprudence reveals that the officer is liable if the force he uses exceeds the reasonable force allowed. In Stoehr v. Payne [132 La. 213, 61 So. 206] and Espenan v. Carona [La.App., 179 So. 119] the court held the defendant policemen liable for damages resulting from `unnecessary violence' or `unnecessary brutality' whether the arrest they were effecting was lawful or not. In Stoehr the town marshall used his pistol to strike an intoxicated citizen who had become rowdy. Although the court found *172 that the officer was justified in arresting the plaintiff, he was not justified in using such force to subdue him. A similar situation arose in Espenan. The defendant officer arrested the plaintiff, an ice cream vendor, for selling without a license. In the ensuing hassle, the plaintiff sustained injuries. Although the court was satisfied that the arrest was in order, the issue of the officer's liability was to be determined by the reasonableness of the force he employed. One factor which Louisiana courts have used to determine whether or not the force employed by police officers was reasonable has been the relative physical size and strength of the officer. The court in Musmeci v. American Auto Ins. Co., La.App. [146 So.2d 496] was impressed by the fact that the plaintiff was a 125-pound drunk, as opposed to a 250-pound officer, in finding that the officer had acted with unreasonable force. Similarly, in Stoehr v. Payne, the court felt that defendant marshall and his deputy were men of sufficient strength to handle the boisterous and drunken plaintiff without striking him in the head with a pistol. The fact that an officer often must make a quick decision is appreciated by the court. In Crawford v. Maryland Cas. Co. [La.App., 169 So.2d 612] the plaintiff was stopped by an officer and thrust his hand suspiciously into his pocket. The officer, alarmed by his sudden action, struck plaintiff with his club. Although finding that the force used had an `unfortunate and tragic result,' the court determined that the officer had acted reasonably under the circumstances." Comment, "Tort Liability of Law Enforcement Officers: State Remedies," 29 La.L.R. 130, 131. Emphasis supplied. Citations and footnotes omitted.
The majority labels the striking of plaintiff by the officer with a pistol as "unfortunate." I would hold it unreasonable under the circumstances and would award damages. If a 125-pound, 5'4" unarmed and unthreatening woman, is forcibly resisting a 170-pound, 6' policeman who is trained in hand-to-hand combat and basic police techniques, he is not entitled to hit her two or more times with a pistol to render her unconscious and bleeding.
I respectfully dissent.