STATE of Iowa, Plaintiff-Appellee,

v.

Douglas Wayne HAUAN, Defendant-Appellant.

No. 84–276.

Court of Appeals of Iowa.

Nov. 20, 1984.

Richard J. Hanson of Sarno & Hanson, Lake Mills, for defendant-appellant.

Thomas J. Miller, Atty. Gen. and Rebecca L. Claypool, Asst. Atty. Gen. for plaintiff-appellee.

OXBERGER, Chief Judge.

The petitioner here asserts error in the trial court judgment finding him guilty of interference with official acts for refusing to give his name when he happened to be at a lounge where a search warrant was executed. We reverse the trial court.

Douglas Hauan was at the C–C Lounge in Joice, Iowa, on May 13, 1983. The lounge is a private club and restaurant. A search warrant was executed at that time in order to seize property allegedly used in connection with illegal liquor sales and prostitution. An agent with the Division of Criminal Investigation identified himself to the first person he encountered and then proceeded down a line of patrons, asking them to identify themselves. The officers indicated they either did not specifically

identify themselves as law officers to Hauan or could not remember if they did. When Hauan was asked for his name, he responded, "What for," or words to that effect, and was told, "an investigation" was being conducted. Hauan replied that he did not have to identify himself. He was then approached by a deputy and the same conversation ensued. Both the agent and deputy were not in uniform. A state trooper, who was in uniform, asked the defendant for his name, again saying it was needed for an investigation. When the defendant again refused, he was arrested. Hauan did not use any profanity during the incident, and the law officers all testified they thought the defendant was free to go at any time. They also all testified that the sole reason for requesting the defendant's identification was because it was a private club and the defendant was present at the time the warrant was executed.

The State and the defendant disagree regarding which standard should be used to decide if certain activity falls within obstructing justice. Defendant also claims he had no duty to answer the questions, since he was not a suspect or under arrest. He also notes the nature of the investigation and the officer's status was never made clear before he was arrested.

The first question raised involves interpretation of the applicable Iowa Code. The current section was passed in 1977 when the Iowa Criminal Code was entirely revamped. No case has yet appeared interpreting the exact definition of the wording used. The statute states:

> *Interference with Official Acts.* A person who knowingly resists or obstructs anyone known by the person to be a peace officer in the performance of any act which is within the scope of the officer's lawful duty or authority, or who knowingly resists or obstructs the service or execution by any authorized person of any civil or criminal process or order of any court, commits a simple misdemeanor.

Iowa Code § 719.1 (1983).

The defendant contends that the word "resist" means the same thing as "obstruct." This is important, defendant claims, because in an earlier case, the court interpreted the word "resist" and stated, "It is sufficient if the person charged engaged in actual opposition to the officer through the use of actual or constructive force *making it reasonably necessary for the officer to use force to carry out his duty.*" *State v. Donner,* 243 N.W.2d 850, 854 (Iowa 1976) (emphasis added). Defendant claims this is the test which should be used and that he at no time placed the officer in a position of being required to use force to carry out his duty.

The State claims that resisting is not the same as obstructing, and that *Donner* does not apply because the case refers to the prior code section making it a crime to "resist" or "oppose" an officer. The State says *Donner* finds that "resist" or "oppose" mean the same thing, but that obstruct refers to many more acts and the stricter standard is not required. Instead, the State says, we should adopt the Black's Law Dictionary definition of "obstruct" which includes, "To hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow.... To impede; to interpose impediments to the hindrance or frustration of some act or service, as to obstruct an officer in the execution of his duty." Black's Law Dictionary 972 (rev. 5th ed. 1979).

When interpreting the meaning of a statute, we avoid construction which renders a part of the statute superfluous or redundant, and instead presume that each part of the statute has a purpose. *George H. Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 500 (Iowa 1983). All parts of the statute are read together and we do not give undue importance to an isolated part. *Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530, 532 (Iowa 1981). Instead, we look at the object to be accomplished, the evils to be remedied, and the intent of the legislature. *Shidler v. All American Life & Financial Corp.,* 298 N.W.2d 318, 321 (Iowa 1980). We also will assume that the legislature is

familiar with the existing state of law. *Hines v. Illinois Central Gulf R.R.*, 330 N.W.2d 284, 289 (Iowa 1983).

■ We believe that the defendant puts too much reliance on *Donner*. In that case the court was interpreting only the word "resist" and only deciding if the statute was void for vagueness. *Donner*, 243 N.W.2d at 853. The court used the words "oppose" and "obstruct" in defining the word "resist," but those words are synonyms and do not necessarily mean the exact same thing. We will not assume the legislature inserted the words for no reason, and believe it had a purpose in using both "resist" and "obstruct." Each word must mean something different or it is redundant.

Rather, it has been noted that the combination and choice of words used in statutes on obstructing justice lends a different meaning in each case. When a statute contains the single word "resist" it is strictly interpreted. 58 Am.Jur.2d Obstructing Justice §§ 10, 12 (1971). The words, "resist, obstruct, or abuse" are more broadly interpreted than "resist, obstruct, or oppose." 67 C.J.S. Obstructing Justice § 7 (1978). Obstruct has been defined as "to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent ..." 58 Am.Jur.2d, at § 12.

The different effect of the variation in wording was noted by the courts of another jurisdiction in *State v. Neubauer*, 2 Conn.Cir.Ct. 169, 197 A.2d 93 (1963). The court noted there were three types of statutes; one with the word "resist" which was very restrictive; one with the words "resist, obstruct, and oppose," and a third broad statute with "resist, obstruct, and abuse." *Id.* at 172, 197 A.2d at 95. In *Neubauer*, the Connecticut legislature had chose the latter, more liberal statute. *Id.* The court found this statute included many more activities than the other statutes. *Id.* However, it went on to hold that even though more activities could come within the statute, the key question still remained whether the officer's acts were hindered. It stated, "the purpose of the statute, the legislative intent, was to allow an officer to execute his office and his appointed duties without hindrance or obstacles and to allow the actions of the police to proceed calmly, efficiently and without difficulty." *Id.* at 173, 197 A.2d at 96. It went on to find that although the defendant in that case had shouted obscenities at officers carrying out an investigation, no hindrance occurred. *Id.* Even though the officers had been verbally abused, the threshold test had not been met of whether the acts constituted a hindrance of the officer's duties. *Id.*

■ This, we believe, it also the key question here. We agree with the state that "obstruct" is more broad than "resist," and includes putting obstacles in the path of officers completing their duties. The initial threshold question must, however, be reached of whether these acts, although possibly included with the statute, constitute a hindrance of the official duties.

■ A search and seizure cannot be hindered by the defendant if the police officer's acts are not within the scope of the search. 67 C.J.S. Obstructing Justice at § 7. Defendant argues that since he was not deprived of his freedom, he was under no duty to answer questions presented to him. He cites a recent Supreme Court case referring to the well-known proposition first presented in *Terry v. Ohio* that a person not seized need not answer questions made by law officers. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). He argues in the alternative that if he was seized and not free to go, the actions of the officers were improper, since the Supreme Court has stated, "a person's mere propinquity to others independently suspected of criminal activity does not, without more give rise to probable cause to search that person.... This requirement (of probable cause) cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ybarra v. Illinois*, 444 U.S. 85, 91, 342, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979).

The State responds saying that the defendant's name was needed since he might

have been a material witness. It also claims that the *Terry* standard does not apply since this was not a stop and frisk.

We disagree that *Terry* does not apply here. Our fourth amendment allows us to be free from unreasonable search and seizure, and we have accordingly limited the long arm of the law from intruding into all aspects of life. *Terry v. Ohio,* 392 U.S. 1, 11, 88 S.Ct. 1868, 1874, 20 L.Ed. 889, 900 (1968). There was no reason to believe the defendant could be a material witness aside from the fact he was present at the lounge during the search. The search warrant specifically named seizure of records of illegal liquor sales, records of prostitution, illegal liquor, and records of members who might be involved with any of the above. The only person named was Charles Gerhart, the only place named was the building. Defendant was not seized, as the officers indicated.

■ The question of whether a person must answer questions put to him or her was addressed by Justice White in *Terry.* In his opinion discussing the implications of the court's decision, he commented:

> There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. *Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest,* although it may alert the officer to the need for continued observation.

(emphasis added). *Id.* at 34, 88 S.Ct. at 1886, 20 L.Ed. at 913. Justice Harlan also wrote to clarify the court's holding, commenting, "If and when a policeman has a right ... to disarm such a person for his own protection, he must first have the right not to avoid him but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily *the person addressed has an equal right to ignore his interrogator and walk away;* he certainly need not submit to a frisk for the questioner's protection." (emphasis added). *Id.* at 32–33, 88 S.Ct. at 1885–86, 20 L.Ed. at 912. The *Florida* case cited by defendant indicates the statements of *Terry* are good law today. We believe the Supreme Court pronouncements are evident that Hauan had no duty to answer the questions regarding his identity.

This viewpoint has been recently reaffirmed by the Supreme Court in discussing the *Terry* comments when it said, "[T]his means that the officer may ask a detainee a moderate number of questions to determine his identity and try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obligated to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer v. McCarty,* —— U.S. ——, ——, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).

We note there have been cases where refusal to identify oneself amounts to obstructing justice. But in each of these cases there was probable cause to believe the defendant was involved or connected to some criminal activity. *City of St. Paul v. Willier,* 304 Minn. 430, 431, 231 N.W.2d 488, 489 (1975) (defendant stopped after several traffic violations); *East Brunswick Township v. Malfitano,* 108 N.J.Super. 244, 246, 260 A.2d 862, 863 (1969) (defendant suspected of trespassing; case distinguished from situation with no probable cause); *Logan v. Swift,* 327 So.2d 168, 169 (La.Ct.App.1976) (defendant suspected of truancy).

■ While the defendant's acts might have fallen within the purview of the statute under other circumstances, we do not believe that a person sitting in a private bar or restaurant during the execution of a warrant has, without more, interferred in the officer's duties in refusing to present identification. This is not a country where

an individual must present his or her green card and proper papers at the whim of a law officer, or face jail. Defendant gave no reason to arouse suspicion by his inopportune presence at the lounge. The duties of the law officers were not hindered. We reverse the conviction.

REVERSED, JUDGMENT VACATED.

All Judges concur except DONIELSON, J., who dissents.

DONIELSON, Judge (dissenting).

I respectfully, but vigorously, dissent. The majority relies heavily on language from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889 (1968) and *Berkemer v. McCarthy*, — U.S. —, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), to support its reversal of this case. I believe such reliance is misplaced. *Terry* involved a confrontation on a public street between a citizen and a police officer who was investigating suspicious circumstances. 392 U.S. at 4, 88 S.Ct. at 1871, 20 L.Ed.2d at 896. In *McCarty*, a highway patrol officer stopped a car after observing it weaving on a highway. — U.S. at —, 104 S.Ct. at 3142, 82 L.Ed.2d at 324. The traffic stop was held to be analogous to a *Terry* stop. *Id.* at —, 104 S.Ct. at 3150, 82 L.Ed.2d at 334. The principle to be derived from these cases is that under appropriate circumstances a person may be detained briefly in order to investigate the circumstances which provoked suspicion. However, because there is a fine line between a random stop and a *Terry* stop, the rights of the investigating officers are appropriately limited to stopping a person and frisking him. While an officer may ask questions, the detainee need not respond. *McCarty*, — U.S. at —, 104 S.Ct. at 3150, 82 L.Ed.2d at 334.

Contrary to the majority's opinion, however, I do not believe the principles set forth in *Terry* and *McCarty* are applicable here. The fact situation before this court is unquestionably distinguishable from a *Terry* stop. Law officers entered a *private* club pursuant to a proper, unchallenged search warrant in order to seize property in connection with illegal liquor sales and prostitution. In furtherance of the legitimate investigation, the officers requested the defendant's identification because it was a private club and they believed he may have had information as to criminal activities at the establishment. Since the defendant was present on the very night law officers detected criminal activity, it is likely the defendant would be called before a grand jury or needed as a witness. It is not illogical to assume a person present at a *private* club, which is being investigated for liquor and prostitution, is a member of that club and hence a possible witness before a grand jury in one fashion or another. The defendant's refusal to identify himself clearly obstructed the investigation in this respect. This is not a situation where persons in a public place were randomly asked for identification for no apparent reason. Nor is it a situation where the officers merely had the reasonable and articulable suspicion necessary for a *Terry* stop. The officers had met the standards of a search warrant and were legally and properly at a non-public establishment. Iowa Code § 719.1 (1983). In such a situation, the balance between the right of conducting a legitimate investigation and protection of individual privacy falls in favor of allowing the officers to carry out a traditional investigative function in an unhindered fashion.

The majority indicates that the defendant did not know the "nature of the investigation" and the "officer's status was never made clear before he was arrested." I am not aware of any law that indicates that the constabulary is required to inform witnesses or a possible defendant of the nature of any investigation which is being conducted. Nor can I agree that the officer's status was not made clear. One of the three officers was a uniformed patrolman. It seems to me that this would make his status quite clear.

Accordingly, I would affirm the conviction.