# IN THE COURT OF APPEALS OF IOWA

No. 13-0236
Filed March 12, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LEO WILSON BUSHNELL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Robert E. Sosalla, Judge.

Leo Bushnell appeals from convictions of possession of a controlled substance, possession of drug paraphernalia, and interference with official acts. **AFFIRMED.**

Lars G. Anderson of Holland and Anderson, L.L.P., Iowa City, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Lisa Epp, Assistant County Attorney, for appellee.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

Leo Bushnell appeals from convictions of possession of a controlled substance, possession of drug paraphernalia, and interference with official acts.[1] He contends there was insufficient evidence of possession and there was no evidence of active resistance to support the convictions. Bushnell also argues trial counsel was ineffective in failing to object to testimony that he was under the influence of controlled substances, had mental health issues, and had a prior criminal conviction. There was substantial evidence from which the jury could find constructive possession. Bushnell did more than "ignore[] law enforcement" from which the jury could find interference. We preserve the ineffectiveness claims for possible postconviction relief proceedings.

### I. Background Facts and Proceedings.

At about 1 p.m. on March 8, 2012, uniformed probation officers responded to assist Cedar Rapids police with a domestic disturbance. Monica Wood, Leo Bushnell's live-in girlfriend, was in the hall outside of the apartment when officers arrived. Wood reported she had resided at the apartment with Bushnell for over one month. She reported Bushnell had been drinking and using synthetic marijuana (known as "K2"), they got in a fight over a cell phone, and he was in the apartment having locked her out.

The law enforcement officers pounded loudly at the apartment door, identified themselves as police, and requested that Bushnell open the door, but

---

[1] The convictions of possession of drug paraphernalia and interference with official acts constitute simple misdemeanors from which the defendant has no right of appeal. Iowa Code § 814.6(1)(a) (2011). However, the supreme court treated the notice of appeal as to those two convictions as an application for discretionary review, *see* Iowa R. App. P. 6.108, which was granted. The case was then transferred to this court.

Bushnell did not answer. Their knocking and announcements were loud enough that residents of other apartments came out to see what was happening. Wood, who was waiting on the first floor of the building, was able to hear the officers pounding on the third-floor apartment door. Bushnell called Wood to say "he will do anything I want him to do, just make the police go away."

Knowing that Bushnell had been in a domestic incident, may have been using drugs, and had past mental health issues, the officers decided to enter the apartment to check on Bushnell. They obtained a spare key from the apartment manager, but the door was chained. They broke the chain, again announcing their presence and identifying themselves. Officer Benjamin Keen checked a front closet while Officer Steven Warner and a third officer proceeded further into the apartment. Officer Warner and the other police officer yelled Bushnell's name but received no response. They came upon a locked door, knocked, and announced who they were. Receiving no response, the officers forced the door open.

The officers found Bushnell lying on a bed with a sheet pulled over his body and face. Bushnell's body was rigid. When officers removed the sheet they found he was "wide awake." After a couple commands, Bushnell showed his hands.

Officers searched the apartment. In the living room they found a small safe. Bushnell did not respond to questioning by officers other than to state that the safe was not his but Wood's. Wood explained the safe and its contents belonged to Bushnell. Wood did not have a key to the safe but said she knew where Bushnell hid the key. She assisted officers in opening the safe. Inside the

safe were canisters containing synthetic marijuana and a variety of drug pipes. Lab testing confirmed the presence of salvinorin A, a type of synthetic marijuana.[2] The safe contained no personal documents or items, had no name associated with it, had no receipt of its purchase, and contained no other identifying information. No fingerprints, DNA, or other type of physical evidence was collected from the safe, the key to the safe, or items found in the safe.

Prior to trial, counsel for Bushnell filed a motion in limine requesting, in part, that testimony and evidence "that the defendant is currently on probation" be excluded. With respect to Bushnell's probationary status, the district court ruled the State was not to "inquire into it in any direct examination and avoid that in any direct examination."

Wood, and Officers Keen and Warner testified at trial. The officers noted having "worked" with Bushnell. They also testified that they entered the apartment to check on Bushnell because they knew of his mental health issues and because Wood reported he was using K2.

Bushnell was convicted as charged and now appeals.

---

[2] The lab report describes the following items submitted for testing. The first, containing
    Synthetic Marijuana described as [t]wo packets of name[] brand K2 inside
    it. One K2 packet is labeled K2 Summit with purple writing. The second
    packet is K2 Citron with orange writing. Each packet is labeled 3 grams.
    The Citron packet is the only one with leafy substance inside it.
However, upon testing of the contents of these two packets, "no controlled substance found."
    The second set of items was "Synthetic Marijuana described as [t]wo packets of
Organic Salvia Divinorum 15x. Both packets have green leafy substance material." This
set of items contained the controlled substance, "salvinorin A." [State's Ex. 4; App. 88].

## II. Scope and Standards of Review.

We review challenges to the sufficiency of the evidence for the correction of legal error. *State v. Cashen*, 666 N.W.2d 566, 569 (Iowa 2003). We uphold the jury's verdict if the record contains substantial evidence to support it. *Id.* Substantial evidence is the quality and quantity of proof that could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.* To gauge whether the evidence is substantial, we review the record in the light most favorable to the verdict. *Id.*

Claims of ineffective assistance of counsel are derived from the Sixth Amendment of the United States Constitution. *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006). We review constitutional claims de novo. *Id.*

## III. Discussion.

*A. Possession.* "When the State charges a person with possession, the State must prove the person exercised dominion and control over the contraband, had knowledge of the contraband's presence, and had knowledge the material was a [controlled substance.]" *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008); *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002).

> Actual possession is not required, and proof of constructive possession is enough. "[A]ll that is necessary is that the accused 'maintains control or a right to control' the contraband." A person has actual possession of a controlled substance when that substance is found on the person. A person has constructive possession of a controlled substance "'when the person has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" Constructive possession is recognized by inferences. However, constructive possession cannot rest simply on proximity to the controlled substance.
> . . . .
> When a person has not been in exclusive possession of the premises where the drugs were located, several factors are

considered when determining whether the person had constructive possession of the controlled substance. These factors include: (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Maxwell*, 743 N.W.2d at 193-94 (citations omitted).

Although the synthetic marijuana was not found on Bushnell's person, there is substantial circumstantial evidence from which a rational jury could find the defendant was in constructive possession of the controlled substance recovered from the safe in his apartment. According to Wood's testimony, she moved into Bushnell's apartment and she did not bring the safe. She testified the safe was Bushnell's and he hid the key when it was not on him. Although the defendant challenged Wood's credibility, issues of credibility are for the jury to determine. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The function of the jury is to weigh the evidence and 'place credibility where it belongs.'" (citation omitted)). The jury was free to believe Wood's statements placing the controlled substance and paraphernalia in Bushnell's control and possession.

*B. Interference with Official Acts.* Interference with official acts occurs when a person "knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer." Iowa Code § 719.1(1). The purpose of the statute "is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance." *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996).

Here, the jury was instructed:

> The State must prove all of the following elements of Interference With An Official Act:
> 1. On or about the 8th day of March, 2012, the defendant . . . knew Ben Keen and Steven Warner were peace officers who were responding to a call.
> 2. The defendant knowingly resisted or obstructed Ben Keen and Steven Warner in their official investigation.

The jury was also instructed, "'Resist' means to oppose intentionally, interfere with or withstand. 'Obstruct' means to hinder intentionally, retard or delay."

The instruction is consistent with our observations in *State v. Hauan*, 361 N.W.2d 336, 338-39 (Iowa Ct. App. 1984), that "resist" means opposing the officer "'through the use of actual or constructive force making it reasonably necessary for the officer to use force to carry out his duty,'" and "[o]bstruct has been defined as 'to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent.'" (Citations omitted.) *See also* Black's Law Dictionary 1183 (9th ed. 2009) (stating "obstruction" means to "something that impedes or hinders, . . . an obstacle"). The threshold question is whether the defendant's acts constituted a hindrance of official duties. *Hauan*, 361 N.W.2d at 339.

Bushnell argues this case is like *State v. Smithson*, 594 N.W.2d 1, 3 (Iowa 1999), where the supreme court reversed a conviction for interference with official acts which was "based entirely on Smithson's failure to turn down the music at the officer's request." The court noted that interference with official acts "conveys the idea of active interference." *Smithson*, 594 N.W.2d at 2 (citation omitted). We believe there was evidence from which the jury could find active interference.

There was evidence Bushnell knew of the officers' presence; indeed, he asked Wood to "make the police go away." The jury could also reasonably find that Bushnell actively hindered the officers by chaining the front door of the apartment, and retreating to an interior room and locking the door to that room. Substantial evidence supports the interference conviction.

*C. Ineffective-assistance-of-counsel claims.*

To prevail on his claims of ineffective assistance of counsel, Bushnell must prove: "(1) counsel failed to perform an essential duty and (2) prejudice resulted." *Shanahan*, 712 N.W.2d at 136. "When there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different, prejudice results." *Id.* (citations and internal quotation marks omitted).

We generally will preserve an ineffective-assistance-of-counsel claim for a postconviction relief proceeding "where preserving the claim allows the defendant to make a complete record of the claim, allows trial counsel an opportunity to explain his or her actions, and allows the trial court to rule on the claim." *Id.* We believe this is a case where we must allow trial counsel an opportunity to explain her actions in not objecting to testimony by officers about their knowledge of the defendant's mental health and substance abuse issues. We therefore preserve the ineffectiveness claim for possible postconviction relief proceedings and otherwise affirm the convictions.

**AFFIRMED.**