# IN THE COURT OF APPEALS OF IOWA

No. 14-0464
Filed May 25, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**BRENNA LYN BETTS,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker (motion to suppress) and Kevin A. Parker (trial and sentencing), District Associate Judges.

The defendant appeals from her convictions and sentences for assault on a peace officer and interference with official acts. **CONVICTION AFFIRMED, SENTENCE REVERSED, AND REMANDED FOR RESENTENCING.**

Joseph C. Glazebrook of Glazebrook, Moe & Hurd, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Brenna Betts appeals from her convictions and sentences for assault on a peace officer and interference with official acts. She maintains the district court should have granted her motion to suppress because officers had no reasonable basis for seizing her. She also maintains there was not sufficient evidence to sustain her conviction for interference with official acts and the district court abused its discretion when it sentenced her to her to consecutive sentences resulting in ten days incarceration without stating sufficient reasons on the record for the sentence.

**I. Background Facts and Proceedings**

On December 12, 2012, Betts was observed speeding by Officer Rafe Albers. By the time Officer Albers was able to catch up to her vehicle, Betts had parked her car in the parking lot of her apartment complex and exited her vehicle. When the officer told her that she had been speeding and he needed her identification, Betts argued that he could not cite her for speeding because she was no longer in her car and the keys were no longer in the ignition. At the same time, Betts was helping her four-year-old daughter out of the back of the car.

Officer Albers asked Betts to return to her vehicle, and she refused to do so. He stated that she would be arrested for "interference" if she did not comply, and Betts then picked up her daughter and again refused. Officer Albers placed his hand on Betts's arm and told her she needed to get in the back of his squad car then. Betts became emotional and began yelling at the officer. Officer Albers radioed for backup and again told Betts to get into his squad car. Betts carried her daughter toward the backseat of the squad car, but she refused to get in

when Officer Albers opened the door for her. Betts continued to yell and swear at the officer. She continued to dispute that he could make a traffic stop in the parking lot. Officer Albers reiterated that he had observed her driving forty-eight miles per hour in a zone where driving was limited to thirty-five miles per hour and that she was being arrested for interference. He told her to put her daughter down so he could put handcuffs on her, and Betts began screaming for help. Betts refused to put her daughter down, and Officer Albers put the cuff on one of Betts's hands while she held her daughter.

Betts eventually got in the backseat of the car with her daughter. On the video from the squad car, Betts can be heard saying, "Oh, I got a knife bitch." While in the back of the squad car, Betts called her mother and the daughter's father for help and to pick up the daughter. At Betts's request, Officer Albers attempted to speak with both her mother and the child's father. Officer Albers again called for backup.

Within approximately ten minutes, three other police officers arrived in response to Officer Albers's call for assistance. Betts attempted to plead her case to the new officers. When they did not agree with her, she told the officers that she would not put her daughter down and "no one was touching [her]." The police chief, Eddy Kuhl, told Betts they needed her to cooperate with them, and she again argued that she had done nothing wrong. Betts did not respond to questions about when someone would arrive to take the daughter. She continued to scream at the officers from inside the squad car. At one point, while talking to someone on the phone, Betts said, "I'm about to knock this motherfucker out."

After some time, Chief Kuhl decided the officers would open the door and remove Betts's daughter from the back of the squad car so Betts could be taken to jail. Chief Kuhl then asked Betts to step out of the car, and she responded by asking what he was doing. Chief Kuhl again told Betts to get out of the car, and she refused to comply until her mother arrived. Chief Kuhl then took Betts's phone from her, which she was holding between her shoulder and her ear. The officers used Betts's arms to pull her out of the back seat of the car. She began screaming and went limp, and one of the officers removed her daughter from her arms and took the daughter to an unmarked police vehicle. According to the testimony from Officer Albers and Chief Kuhl, Betts then attempted to kick Officer Albers in the groin. She missed—with her foot going between his legs—but she made contact with his pant leg. At trial, Betts's attorney implied that Betts was unsteady and was merely trying to get her balance.

The officers took Betts down to the ground and handcuffed her. She was then placed back in the squad car and ultimately taken to jail. Betts was arrested for interference with official acts, in violation of Iowa Code section 719.1 (2011).

Later, Betts was charged by trial information with the additional charges of with child endangerment, in violation of Iowa Code section 726.6(1)(a), (3), and (7); and assault on peace officer, in violation of Iowa Code sections 708.1 and 708.3A(4).

Following a trial by jury, Betts was convicted of interference with official acts and assaulting a peace officer. She was acquitted of child endangerment.

Betts was sentenced to 365 days with all but ten days suspended for assault on a peace officer. She was sentenced to thirty days with all thirty

suspended for interference with official acts. The district court ordered the two sentences to run consecutively. Additionally, Betts was placed on probation for one year.

Betts appeals.

## II. Standard of Review

We review the district court's denial of Betts's motion to suppress de novo. *See State v. Dawdy*, 533 N.W.2d 551, 553 (Iowa 1995). "We resolve the question by making our own independent evaluation of the totality of the circumstances." *Id.*

"A motion for judgment of acquittal is a means of challenging the sufficiency of the evidence, and we review such claims for corrections of errors at law." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). If a verdict is supported by substantial evidence, we uphold the finding of guilt. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). "In conducting our review, we consider all the evidence, that which detracts from the verdict, as well as that supporting the verdict." *Id.* We review the evidence in the light most favorable to the State. *Id.*

We review the district court's sentence for an abuse of discretion. *State v. Hill*, ___ N.W.2d ___, ___, 2016 WL 1612950, at *2 (Iowa 2016).

## III. Discussion

### A. Motion to Suppress

Betts maintains the officer did not have probable cause to arrest her for interference with official acts, so the seizure of her person was unreasonable and in violation of her constitutional rights. She argues any evidence obtained after

the unlawful seizure must be suppressed. However, Betts has not enumerated any evidence that was obtained following the allegedly unlawful seizure. Her argument appears to be that if the officer was wrong to seize her, then she gets a "free pass" for her conduct following the seizure.

Although "[a]t common law, reasonable resistance to unlawful arrest was privileged conduct," that is no longer the case in Iowa. *See State v. Thomas*, 262 N.W.2d 607, 610 (Iowa 1978); *see also* Iowa Code § 804.12. "[A] person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest." *Thomas*, 262 N.W.2d at 611. A defendant's response to an invalid arrest can create independent grounds for a lawful arrest. *See Dawdy*, 533 N.W.2d at 555 ("Even though an initial arrest is unlawful, a defendant has no right to resist the arrest. If the defendant does so, probable cause exists for a second arrest for resisting."). Even if the officer's initial seizure of Betts for interference with official acts was invalid, she is still responsible for her later actions. The district court properly denied Betts's motion to suppress.

### B. Sufficiency of the Evidence

Betts maintains there was not sufficient evidence to support a conviction for interference with official acts. A person interferes with official acts when the person "knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . ." Iowa Code § 719.1.

Betts does not dispute that she knew Officer Albers was a peace officer nor does she dispute Officer Albers was performing an act within his scope of

authority. Rather, she maintains that she did not resist or obstruct. Additionally, Betts maintains that when determining whether sufficient evidence exists to support the conviction, we may only consider whether her decision "not to get back into her car or the officer's car upon the officer's directives" constituted interference. She claims that is the only theory of prosecution advanced by the State. *See* Iowa R. Crim. P. 2.55(3) (requiring a complaint of a simple misdemeanor to contain "[a] concise statement of the act or acts constituting the offense . . ."); *see also State v. Smithson*, 594 N.W.2d 1, 3 (Iowa 1999) ("[W]hen a crime may be committed in different ways and the State specifies one way, the offense must be proved to have been committed in the manner charged.").

First, we note that the complaint and affidavit for the charge of interference with official acts indicates that Betts refused to return to her car when asked and refused to get in the squad car when she was told. It also indicates that when the officers tried to remove Betts from the squad car, "she began to struggle with [them] and tried to kick [Officer Albers] in the groin." As such, our review is not constrained to whether Betts's failure to get in her car or the squad car amounts to interference.

Next, we consider whether there was sufficient evidence Betts resisted or obstructed. "Obstruct" is a more broad term than "resist." *State v. Hauan*, 361 N.W.2d 336, 339 (Iowa 1984). "Obstruct has been defined as 'to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent.'" *Id.* (citing 58 Am. Jur. 2d *Obstructing Justice* §12 (1971)). It also includes "putting obstacles in the path of officers completing their duties." *Hauan*, 361 N.W.2d at 339. "The terms '*resist*' and '*obstruct*' . . . do not include

verbal harassment unless the verbal harassment is accompanied by a present ability and apparent intent to execute a verbal threat physically." Iowa Code § 719.1(3). "The purpose of criminalizing conduct that interferes with official police action is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance." *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996).

Here, we believe sufficient evidence exists to support Betts's conviction for interference with official acts. Betts actively resisted arrest. When Officer Albers first told her she was under arrest, she refused to put her daughter down to be handcuffed and refused to get in the squad car. After she eventually got in the squad car, she refused to get out even after multiple orders from the officers to exit the vehicle. Once the officers pulled her out of the vehicle, she struggled against them before making her body go limp. She clung to her daughter—and instructed her four-year-old daughter to do likewise—rather than letting the officers remove her daughter from the scene. Betts maintains failure to cooperate does not rise to interference with official acts, but Betts's conduct rose to active interference. *See Smithson*, 594 N.W.2d at 2 (noting the language of section 719.1(1) "was chosen because it conveys the idea of active interference" rather than "more passive language such as 'object' or 'fail to cooperate'" (citation omitted)).

### C. Sentencing

Lastly, Betts maintains the district court abused its discretion when it sentenced her because the court did not state sufficient reasons for the sentence on the record. Betts was sentenced to 365 days with all but ten days suspended

for assault on a peace officer. She was sentenced to thirty days with all thirty suspended for interference with official acts. The district court ordered the two periods of suspended time to run consecutively, and Betts was placed on probation for one year.

During the sentencing colloquy, the court stated it was ordering the sentences "based upon the protection of the public, based upon the rehabilitative needs of yourself, based upon the evidence presented at trial, based upon the Minutes of Testimony as to the interference charge . . . ." The court did not provide any further explanation of why the two sentences were imposed consecutively.

In a recent case, *State v. Hill*, our supreme court overruled precedent which allowed us to consider a district court's decision to run sentences consecutively as part of an overall sentencing plan. ___ N.W.2d at___, 2016 WL 1612950, at *4. Sentencing courts are now required to "explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration." *Id.* at *5.* For this reason, we reverse Betts's sentences and remand for resentencing. *Id.* ("The rule of law announced in this case . . . shall be applicable to the present case, those cases not finally resolved on direct appeal in which the defendant has raised the issue, and all future cases.").

**IV. Conclusion**

The district court properly denied Betts's motion to suppress evidence, and sufficient evidence supports her conviction for interference with official acts. We affirm her conviction. However, because the district court did not state

reasons on the record for running Betts's sentences consecutively, and a recent change in case law requires it, we reverse Betts's sentences and remand for resentencing.

**CONVICTION AFFIRMED, SENTENCE REVERSED, AND REMANDED FOR RESENTENCING.**