# IN THE COURT OF APPEALS OF IOWA

No. 24-1626
Filed November 13, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JERMAINE LEWIS CARTER JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows, Judge.

The defendant appeals his convictions for several drug offenses, interference with official acts, and person ineligible to carry dangerous weapons. **AFFIRMED.**

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney General, for appellee.

Considered without oral argument by Schumacher, P.J., Ahlers, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**SCHUMACHER, Presiding Judge.**

Jermaine Carter Jr. appeals his convictions for possession of methamphetamine with intent to deliver, possession of a controlled substance, interference with official acts–firearm, possession of marijuana with intent to deliver, and person ineligible to carry dangerous weapons. Carter claims the district court erred in denying his motion to suppress because "the objective facts" known to police did not "rise to the level of reasonable suspicion necessary to justify the warrantless seizure of Carter and his vehicle." Upon our review, we conclude even if the seizure was unreasonable, Carter's resistance to arrest provided an independent basis to search, resulting in the discovery of methamphetamine, cocaine, marijuana, and a firearm. Accordingly, we affirm.

I. **Background Facts and Proceedings**

In October 2023, Davenport Police Corporal Emily Rasche was patrolling an area downtown near Yoshi's bar that had been the subject of numerous complaints over several months about "large disturbances, loud music, . . . a lot of people hanging out." Due to the complaints, Davenport police had been running extra patrols in that area. Around 11:00 p.m., Rasche observed "a decent amount of people" and "numerous vehicles" parked in the streets and parking lots near Yoshi's. As she drove through an alley, Rasche "smelled the odor of burnt marijuana emanating in the air" and saw people "actively drinking liquor." Some vehicles were parked in the lot of a business that was closed, which had a sign stating the lot was reserved for customers only and that "unauthorized vehicles will be towed away."

Rasche recognized Carter sitting in the driver's seat of one of those vehicles; she knew Carter was "involved in a shooting" several months prior, and she also "had a prior case on him for drugs and guns."[1]  Rasche did not stop to investigate the smell of marijuana at that time because she "was the sole officer" in the area and "it would have created a safety risk" to approach the vehicles alone.

About an hour and a half later, Rasch returned to the area with other officers.  Rasche drove through the lot again and confirmed the vehicles, people, and smell of marijuana were still present.  She parked and approached "the first accessible vehicle" in the lot, which was Carter's.  As she neared the passenger side of Carter's car, Rashe "observed him reach towards the back passenger seat and then quickly down to the front driver's seat floorboard."  Rasche knocked on the passenger side window, and when it rolled down, she "could immediately smell the odor of raw marijuana."  She asked Carter for his identification, and he was "less than cooperative."  Rasche noticed Carter was "target glancing" as if he was looking for "a way out," whether it was "a flight on foot" or a "flight in the vehicle."  Carter's "furtive movements" and lack of compliance made Rasche "nervous," so she asked another officer to get Carter out of the vehicle.

Officer Joshua Bender approached the driver's side of Carter's vehicle, which was open.  Bender "smelled the odor of burnt marijuana and raw marijuana inside" the car.  The officers told Carter they smelled marijuana coming from the car and advised him to get out.  Carter "was very agitated" and "began to argue" with the officers.  The officers reiterated that Carter's car "smells like weed."  When

---

[1] Prior to 2023, Rasche had worked for over five years as a detective in the department's narcotics unit.

Carter did not exit the vehicle, Bender began to physically remove him from the car, which triggered Carter to yell that the officers were "snatching" him and dispute that he was "smoking in the car."[2] Bender then noticed a firearm on the rear seat that had been within Carter's "immediate reach." Carter continued to yell and swear at the officers as he was handcuffed and placed in a squad car. It took the assistance of four or five officers to detain Carter.

Officers searched Carter incident to his arrest and searched Carter's car under an electronic warrant. On Carter, they found marijuana and cash. Inside the car, they found large amounts of marijuana, packing material, methamphetamine-laced ecstasy pills, cocaine, a digital scale, and the gun from the rear seat.

The State charged Carter with ten offenses relating to the encounter and evidence seized. Carter filed a motion to suppress everything found after he was seized, claiming the seizure and subsequent search violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. After hearing, the district court denied the motion, stating:

> The Court does find the testimony of Officers Behning, Dorton, Bender, and Rasche to be credible, and their testimony was corroborated by the other evidence, as well as by each other. The Court does believe that under the circumstances described here by the officers that it did constitute reasonable and articulable suspicion to do a temporary investigative detention under *Dewitt*, *Terry*, and *Kreps*. Further, when Mr. Carter was arrested for interference and other offenses as well, that did provide the situation where there was a legitimate search incident to arrest. I think also in this situation, counsel, something that wasn't really argued is it appears there would have been a plain view basis for this search too. In any event, all of that is part of what was articulated in the affidavit for the search warrant. The search warrant isn't being challenged under a *Franks*

---

[2] During the scuffle, Bender's body camera mount dismantled.

challenge. Since the Court finds that the testimony was credible and it formed the basis for the search warrant, the search warrant was legitimate as well, so because of all of that, the motion to suppress is denied.

(Citing *State v. Dewitt*, 811 N.W.2d 460 (Iowa 2012); *State v. Kreps*, 650 N.W.2d 636 (Iowa 2002); *Terry v. Ohio*, 392 U.S. 1 (1968); *Franks v. Delaware*, 438 U.S. 154 (1978).)

Carter thereafter entered a conditional guilty plea to five counts as charged and one lesser-included offense, and the State dismissed the remaining four counts. *See* Iowa R. Crim. P. 2.8(2)(b)(9). The district court accepted Carter's pleas and entered sentence. Carter appeals.[3]

## II.     Standard of Review

The standard of review for a constitutional search and seizure challenge is de novo. We look to the entire record and make an independent evaluation of the totality of the circumstances. We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings.

*State v. McClain*, 20 N.W.3d 488, 494 (Iowa 2025) (cleaned up).

## III.    Discussion

On appeal, Carter claims the "objective facts" known to Rasch did "not rise to the level of reasonable suspicion necessary to justify the warrantless seizure of Carter and his vehicle." He maintains that he was "parked in a private parking lot and had not committed any traffic violations" and police had not received any reports "about criminal activity" occurring in the area he was parked. He further claims "a general smell of burnt marijuana in an area in which over a dozen cars

---

[3] We have jurisdiction over Carter's appeal. *See State v. Skullark*, 23 N.W.3d 49, 53 (Iowa 2025) (discussing Iowa Code section 814.6(3) (2024)).

are parked and with individuals loitering and drinking outside does not give reasonable suspicion to approach Carter's vehicle and order him out."

The State contests Carter's characterization of the facts and circumstances surrounding the officers' encounter with Carter. And the State's argument is persuasive. But the State also proffers another basis to uphold the district court's suppression ruling; namely, that Carter's interference with official acts by failing to provide identification and resisting arrest provided an independent ground to arrest and search him. *See State v. Janes*, No. 22-0749, 2023 WL 4104113, at *5 (Iowa Ct. App. June 21, 2023). We choose to resolve this appeal on that rationale, "[b]ecause even if we were to decide that the seizure was unlawful, [Carter] could not lawfully resist the arrest." *Id.* at *4; *see State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978) ("[A] person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest."); *State v. Betts*, No. 14-0464, 2016 WL 3003344, at *3 (Iowa Ct. App. May 25, 2016) ("A defendant's response to an invalid arrest can create independent grounds for a lawful arrest.").

"A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . ."[4] Iowa Code § 719.1(a) (2023). "'Obstruct' is a more broad term than 'resist'" and "has been defined as 'to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent.'" *Betts*, 2016 WL 3003344,

---

[4] We note that Carter pled guilty to this offense under Iowa Code section 719.9(1)(f), a class "D" felony, because he was "armed with a firearm."

at *4 (quoting *State v. Hauan*, 361 N.W.2d 336, 339 (Iowa 1984)). "The purpose of criminalizing conduct that interferes with official police action is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance." *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996). "[T]he standard for establishing a violation of the interference with official acts statute is generally fairly low." *State v. Wilson*, 968 N.W.2d 903, 918 (Iowa 2022).

Carter was aware Rasche and Bender were peace officers, and he knowingly obstructed their investigation by failing to exit his car and physically resisting the officers when they tried to get him out of the car. *See id.* (noting "the key question is whether the officer's actions were hindered" (cleaned up)). Carter's subjective belief that his vehicle did not smell like marijuana did not excuse his interference with the officers' investigation into such. And when Bender reached to remove Carter from the car, Carter struggled and physically resisted. *See id.* (finding "[g]iven the rather low standard for interference with official acts" that sufficient evidence supported the defendant's conviction due to "her twisting and jostling around while officers attempted to place handcuffs on her"; "[i]t may be that the handcuffs were originally uncomfortably placed, but she was not cooperative as police tried to deal with the situation"). Because Carter committed a new crime by resisting the arrest, the evidence discovered in the search incident to that arrest was admissible. *See Janes*, 2023 WL 4104113, at *5. We therefore affirm Carter's convictions.

**AFFIRMED.**