STATE of Iowa, Appellee,

v.

**Ickey Lee BUCHANAN, Appellant.**

No. 95–1036.

Supreme Court of Iowa.

May 22, 1996.

Linda Del Gallo, State Appellate Defender, and Sarah E. Hennesy, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, and Thomas J. Ferguson, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

The only question on this appeal is whether conviction of the crime of interference with official acts while armed, Iowa Code section 719.1 (1995), requires proof the defendant *intended* to interfere with official conduct. The district court, believing the crime to be one of general intent, refused defendant Ickey Buchanan's request for a jury instruction defining specific intent. Finding no error, we affirm.

The facts are not disputed. Late one evening, Waterloo police officer Randall Chapman was approached by Victor Quinn who claimed that defendant Ickey Buchanan had just threatened him with a shotgun. Officer Chapman radioed for help, and then followed Quinn to Buchanan's house where the incident allegedly took place. He told Quinn to remain in the alley behind the house with the officers who had just arrived on the scene. All the officers involved were in uniform.

Officer Chapman met Buchanan on the front porch. The officer could tell that Buchanan had been drinking. He also noticed a pistol stuck in the waistband of Buchanan's pants and immediately warned Buchanan not to touch or reach for it. He then told Buchanan of Quinn's allegations.

Buchanan denied owning a shotgun, claiming the only gun he possessed was the pistol in his waistband. He confirmed Quinn's story that the two had argued about money, but did not confirm or deny threatening Quinn with a gun. He added that he wanted Quinn to stay away from him. Faced with conflicting stories, the officer decided not to arrest Buchanan but told him he would document the incident and send Quinn home. Meanwhile he ordered Buchanan to take his gun, go back in his house, and not come outside while the police were there. He suggested Buchanan and Quinn should end their dispute for the night and work out their differences some other time. Buchanan indicated that he understood and went back inside his house.

Officer Chapman returned to the alley where Quinn was waiting. He explained what he had said to Buchanan and told him to leave. Just then the back door of the house opened and Buchanan came out holding his gun. Chapman quickly turned around. Before he could say anything, he heard Buchanan slide a round of ammunition into the gun's chamber. Chapman immediately drew his weapon, and ordered Buchanan to drop the gun. Buchanan obeyed. Chapman and the other officers then grabbed Buchanan, disarmed him, and placed him in handcuffs.

For his part, Buchanan testified that he had retreated to his living room on Chapman's order but soon saw two men running across the lawn towards the house. Buchanan explained that he lives in a high-crime neighborhood. He expressed fear of Quinn, a reputed drug dealer, and a belief that Quinn sent the two men to do him violence. Prompted by these fears, Buchanan claimed he left the house and chambered the gun solely to scare the intruders away. The two men did flee, but Buchanan admitted that, in hindsight, walking out the back door was a mistake.

The State charged Buchanan with violating Iowa Code section 719.1, interference with official acts while armed, an aggravated misdemeanor. At trial the district court instructed the jury on the elements of the crime, pertinent definitions, and the meaning of general criminal intent. The court refused to give a specific-intent instruction proposed by the defense. The jury found Buchanan guilty as charged.

On appeal, Buchanan concedes his actions may have actually interfered with police activity but claims this was not his intention. He asserts he was prejudiced by the court's refusal to submit an instruction on specific intent because, without it, his explanatory trial testimony became "tantamount to a plea of guilty." For the reasons that follow, we find the argument unpersuasive.

A person commits the crime of interference with official acts when he or she "*knowingly* resists or obstructs anyone known by the person to be a peace officer ... in the performance of any act which is within the scope of the lawful duty or authority of that officer...." Iowa Code § 719.1 (emphasis added). In accordance with this statute, the court instructed the jury that the State was required to prove the following elements of the offense:

1. On or about the 28th day of August, 1994, the Defendant, Ickey Lee Buchanan, did:

   a. *know* Randall Chapman was a peace officer who was investigating a citizen complaint.

   b. *know* Randall Chapman was acting within the scope of his lawful duty or authority.

2. The defendant, Ickey Lee Buchanan, *knowingly resisted or obstructed* Randall Chapman's investigation of a citizen complaint.

3. The defendant, Ickey Lee Buchanan, was armed with a firearm.

(Emphasis added.) The court also told the jury that " 'resist' means to oppose *intentionally*, interfere with or withstand" and " 'obstruct' means to hinder *intentionally*, retard or delay." (Emphasis added.) Finally, the court gave the following uniform instruction defining general criminal intent:

> To commit a crime a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing that act and he did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his acts.

*See* I Iowa Crim.Jury Instructions 200.1 (1988).

    Buchanan claims on appeal that the requirements of "knowingly" resisting and "intentionally" opposing or hindering official acts creates a specific-intent crime entitling him to a specific-intent instruction.[1] As will be seen, however, emphasizing the term "intent" or "intentional" in connection with criminal activity "is merely to state the obvious"—that accidental or unintended acts do not create criminal culpability. Kermit L. Dunahoo, *The New Iowa Criminal Code*, 29

---

1. Buchanan requested the following instruction on specific intent:

   "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

   Because determining the defendant's specific intent requires you to decide what he was thinking when the act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

*See* I Iowa Crim.Jury Instructions 200.2 (1988).

Drake L.Rev. 237, 301–02 (1979–80) [hereinafter *Dunahoo* ]; *see State v. Brown,* 376 N.W.2d 910, 913 (Iowa App.1985) (mere statutory use of word "intent" does not import specific intent). Instead, our focus must be on *legislative* intent—a determination made by reference to statutory language read in the light of its evident purpose and design. *State v. Conner,* 292 N.W.2d 682, 685 (Iowa 1980). In that connection we have said:

> When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some *further* act or achieve some *additional consequence,* the crime is deemed to be one of specific intent.

*Eggman v. Scurr,* 311 N.W.2d 77, 79 (Iowa 1981) (emphasis added). Thus the term "specific intent" is used to " 'designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime.' " *Eggman,* 311 N.W.2d at 79 (quoting W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 28, at 192 (1972)). In contrast, "general criminal intent refers to whether the defendant intended deliberate or knowing action, as opposed to causing the prohibited result through accident, mistake, carelessness, or absent-mindedness." *Dunahoo* at 294.

By its terms, the statute criminalizing interference with official acts does not require an intent to do a further act or achieve some additional consequence. This is particularly evident when the language of section 719.1 is compared with statutes deemed to require specific intent. *Cf. State v. Ogan,* 497 N.W.2d 902, 903 (Iowa 1993) (assault *with intent to inflict serious injury* held a specific-intent crime); *State v. Winfun,* 261 N.W.2d 484, 486 (Iowa 1978) (premeditated first-degree murder requires specific intent to kill). Had the legislature intended to create a specific-intent crime, it would have defined interference with official acts as action taken "with intent to interfere." *See,*

*e.g.,* Iowa Code § 719.3 (criminalizing acts done with specified "intent to prevent the apprehension or obstruct the prosecution or defense of any person . . ."). In the absence of such language, we presume the legislature intended to criminalize the proscribed act itself, without further proof related to the defendant's subjective desires. *See State v. Redmon,* 244 N.W.2d 792, 797 (Iowa 1976).

Nor does the requirement that the defendant "knowingly" resist or obstruct an officer implicate specific intent. Iowa Criminal Jury Instruction 200.3 defines "knowledge" as "a conscious awareness." The requirement that a defendant act knowingly "is separate and apart from whether a defendant acted intentionally or deliberately, as well as whether a defendant intended any specific result from the commission of his acts." *Dunahoo* at 306–07; *see State v. Ludvigson,* 482 N.W.2d 419, 423 (Iowa 1992) (misappropriation of trust funds requires only knowing and voluntary action, not specific intent); *State v. Smith,* 300 N.W.2d 90, 92–93 (Iowa 1981) (mens rea required for theft is guilty knowledge, not specific intent to defraud). "Knowingly" merely means " 'a knowledge of the existence of the facts constituting the crime, or a knowledge of the *essential facts* and [does] not . . . require the knowledge of the unlawfulness of the act or omission.' " *State v. Winders,* 366 N.W.2d 193, 195 (Iowa App. 1985) (quoting 22 C.J.S. *Criminal Law* § 31(3), at 111 (1961)).

Sound public policy supports this statutory construction. The purpose of criminalizing conduct that interferes with official police action is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance. *State v. Hauan,* 361 N.W.2d 336, 339 (Iowa App.1984). This goal would not be furthered if, in the face of actual interference, an officer were required to guess at a defendant's subjective intent. The only question should be "whether the officer's acts were hindered." *Id.*

Thus, we hold that the crime of interference with official acts, section 719.1, is a general-intent crime and the court committed no error by refusing the defendant's proposed instruction on specific intent. The record before us established that Buchanan

knowingly left his house despite officer Chapman's order to the contrary, all the while carrying a loaded firearm. Buchanan knew Chapman was a police officer. A jury could conclude beyond a reasonable doubt that the officer's lawful duties were hindered while he neutralized what he perceived to be a volatile situation. Given Buchanan's knowing and voluntary conduct, his subjective reasons for defying the officer's commands were irrelevant. The judgment entered upon the jury's verdict must be affirmed.

**AFFIRMED.**