# IN THE COURT OF APPEALS OF IOWA

No. 19-1895
Filed March 17, 2021

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ROBERT WILLIAM KUHN,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Robert William Kuhn challenges his convictions for three counts of sexual exploitation of a minor and three counts of invasion of privacy. **AFFIRMED.**

Edward S. Fishman of Hopkins & Huebner, P.C., Adel, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Robert William Kuhn was convicted of three counts of sexual exploitation of a minor and three counts of invasion of privacy after being caught secretly recording three teenage girls in various states of undress in the bathroom of his business. He appeals, challenging the sufficiency of the evidence and asserting errors in the jury instructions.

## I.     Factual Background

Kuhn was the owner of a record store in West Des Moines that sold records, women's clothing, and other "vintage" items. The record store had an employee bathroom that also served as a storage closet. However, Kuhn also allowed patrons to use the bathroom as a changing room to try on women's clothing for sale in the store.

Sixteen-year-old K.E. entered the record store to browse one day while her mother was at a hair appointment. Kuhn suggested she try on some jeans that were for sale in the store. K.E. agreed, and Kuhn went to "clean up some stuff" in the bathroom so she could use it. After Kuhn came out, K.E. went into the bathroom, closed the door, removed her shorts, and tried on the jeans. After trying on the jeans and deciding she did not want them, K.E. took the jeans off, put her shorts back on, exited the bathroom, and left the store.

A few days later, sixteen-year-old R.S. began working in the record store as Kuhn's employee. On R.S.'s first day, Kuhn asked her to model some clothes he had available for sale in the store. Although not entirely comfortable with the request, R.S. relented, and she also agreed to allow Kuhn to photograph her in the clothes after he offered her money to do so. When R.S. came in for her second or

third day of work, Kuhn had things set up to take photographs. Before R.S. went to change clothes in the bathroom, Kuhn went in by himself to "clean it out." A few seconds later, Kuhn came out and R.S. entered the bathroom. She closed the door, took off her top and jeans, and tried on a dress. She later used the bathroom to try on a t-shirt.

A few days after R.S.'s use of the bathroom as a changing room, another of Kuhn's employees, seventeen-year-old C.P., was in the store for what was approximately her third day of work. C.P. asked to use the bathroom.[1] Kuhn indicated she could but he needed to clean it up first. Kuhn went into the bathroom by himself and exited after a few seconds, and C.P. entered and closed the door behind her.

While using the bathroom, C.P. looked around the room and noticed a video camera on a shelf pointed straight at the toilet upon which she was seated. The camera was partially covered by a shirt, but the lens of the camera was uncovered. Further investigation by C.P. showed the red light was on, indicating it was recording. C.P. tried to cover herself, pulled up her pants, and picked up the camera. The camera display showed it had been recording for three minutes and seventeen seconds—only slightly longer than the time C.P. had been in the bathroom. C.P. watched the video on the camera and saw that it depicted her.

Having discovered the recording, C.P. removed the memory card from the camera, deleted the video from the camera, set the camera back on the shelf so it would not appear to have been moved, and tucked the memory card in the

---

[1] The first few times C.P. worked at the store, she only worked short introductory shifts and did not use the bathroom.

waistband of her leggings. She exited the bathroom, told Kuhn she had to go, and left. C.P. called R.S., informed her about the camera, and told her not to return to the store.[2] C.P. informed her parents, and the parents contacted the police.

Approximately two days after C.P.'s discovery, search warrants were executed at the record store and Kuhn's residence. Officers seized a video camera from the record store bathroom, which revealed deleted videos[3] of K.E., R.S., and C.P. Each video showed a man starting the camera on the shelf in the bathroom, the man immediately leaving the bathroom, and a girl entering the bathroom. The camera was pointed directly at the toilet and the area in the small bathroom where someone would naturally stand to change clothes. Each video depicted a girl exposing her buttocks either in the course of changing clothes (in the case of K.E. and R.S.) or using the toilet (in the case of C.P.). K.E., R.S., and C.P. each identified Kuhn as the man in the videos and identified themselves in their respective videos. The video of C.P. corroborated her testimony of her discovery of the camera.

## II.    The Charges, Jury Instructions, and Outcome

As a result of these events, Kuhn was charged with sexual exploitation of a

---

[2] R.S. and C.P. were friends and both worked at a convenience store near Kuhn's house at which Kuhn was a "regular." While working at the convenience store, C.P. overheard Kuhn talking about his record shop and asked Kuhn if he was hiring. Kuhn eventually offered jobs to C.P. and R.S.

[3] Although deleted, the investigating agent was able to recover the videos. The agent explained that even deleted videos, while not being able to be accessed by normal operation of the camera, could be retrieved with special software so long as the videos had not been recorded over, which these videos had not.

minor[4] and invasion of privacy[5] for each girl, resulting in three counts of each charge. The case proceeded to jury trial.

At trial, the jury was given a separate marshaling instruction[6] for each girl on the sexual-exploitation-of-a-minor charge as follows:

> [T]he State must prove both of the following elements of sexual exploitation of a minor:
> 1. On or about [the specified date], the defendant used, persuaded, induced, enticed, knowingly permitted or otherwise caused or attempted to cause a minor . . . to engage in nudity for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor; and

---

[4] Iowa Code section 728.12(1) (2018) makes it a class "C" felony offense of sexual exploitation of a minor to

> employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor to engage in a prohibited sexual act. . . . A person must know, or have reason to know, or intend that the act . . . may be photographed, filmed, or otherwise preserved in a visual depiction.

A "prohibited sexual act" is defined to include "[n]udity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor." Iowa Code § 728.1(7)(g). A "minor" is defined as "any person under the age of eighteen." *Id.* § 728.1(4).

[5] Iowa Code section 709.21(1) defines this aggravated misdemeanor offense of invasion of privacy as:

> A person who knowingly views, photographs, or films another person, for the purpose of arousing or gratifying the sexual desire of any person, commits invasion of privacy if all of the following apply:
> a. The other person does not consent or is unable to consent to being viewed, photographed, or filmed.
> b. The other person is in a state of full or partial nudity.
> c. The other person has a reasonable expectation of privacy while in a state of full or partial nudity.

"Full or partial nudity" is defined as "the showing of any part of the human genitals or pubic area or buttocks, or any part of the nipple of the breast of a female, with less than fully opaque covering. Iowa Code § 709.21(2)(a). "Photographs or films" is defined as "the making of any photograph, motion picture film, videotape, or any other recording or transmission of the image of a person." *Id.* § 709.21(2)(b).

[6] A marshaling instruction is one that "sets out, hopefully in plain language, what the State must show in order to convict the defendant of the crime charged." *State v. Kuhse*, 937 N.W.2d 622, 633 (Iowa 2020) (Appel, J., concurring). It has been referred to as "the crown jewel of the court's instructions in a criminal case." *Id.* (Appel, J., concurring).

2. The defendant knew, had reason to know, or intended that the act would be filmed or preserved in a visual medium.

If the State has proved both of the elements, the defendant is guilty of sexual exploitation of a minor. If the State has failed to prove either one of the elements, the defendant is not guilty . . . .

Regarding the invasion-of-privacy charges, the jury was separately instructed on each count as follows:

[T]he State must prove all of the following elements of invasion of privacy:

1. On or about [the specified date] the defendant knowingly filmed [the specified girl];

2. The defendant did so for the purpose of arousing or gratifying the sexual desire of any person;

3. [The specified girl] did not consent to the filming or could not consent to the filming;

4. [The specified girl] was in a state of full or partial nudity; and

5. [The specified girl] had a reasonable expectation of privacy while in a state of full or partial nudity.

If the State has proved all of the elements, the defendant is guilty of invasion of privacy. If the State has failed to prove any one of the elements, the defendant is not guilty . . . .

Kuhn was found guilty of all six charges and sentenced accordingly. He appeals and raises two issues.

## III.    Sufficiency of the Evidence

As noted in the recitation of the marshaling instructions, based on the theories of how Kuhn committed the crimes, both sexual exploitation of a minor and invasion of privacy required the State to prove Kuhn acted with the purpose of arousing or gratifying the sexual desire of someone. Here, the State alleges Kuhn acted with the purpose of arousing or gratifying his own sexual desires. Kuhn challenges the sufficiency of the evidence establishing he acted with that purpose.

Claims of insufficient evidence are reviewed for correction of legal error. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "We will uphold the verdict

on a sufficiency-of-evidence claim if substantial evidence supports it." *Id.* "Evidence is substantial 'if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)). All evidence is considered, not just the evidence supporting the verdict. *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017).

Kuhn asserts the State failed to establish the sexual-desire elements of the offenses because he placed the camera in the bathroom to prevent theft. Although Kuhn did not testify, he was able to present this defense through the questioning of a law enforcement officer who interviewed him. The officer testified that when he arrived to conduct the interview, Kuhn "immediately said that he made a bad decision [and] that he immediately regretted it." The officer testified that Kuhn "emphasized multiple, multiple times that [the camera in the bathroom] was a theft prevention device."

"Intent is 'seldom capable of direct proof.'" *State v. Evans*, 671 N.W.2d 720, 724 (Iowa 2003) (citation omitted). "[A defendant] will generally not admit later to having the intention which the crime requires . . . his thoughts must be gathered from his words (if any) and actions in light of surrounding circumstances." *State v. Radeke*, 444 N.W.2d 476, 478–79 (Iowa 1989) (quoting W. La Fave & A. Scott, *Handbook on Criminal Law* § 3.5(f), at 226 (2d ed. 1986)). Therefore, we permit the fact finder to infer the requisite intent that a person acted with the purpose to arouse or gratify the person's sexual desires from the person's "conduct, remarks, and all surrounding circumstances." *State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008).

Turning to Kuhn's conduct, remarks, and the surrounding circumstances, we look at Kuhn's claim that he set up the camera for theft-prevention purposes. His claim is contradicted by the evidence. As to K.E., the video clearly shows she was allowed into the bathroom wearing a t-shirt and fairly short athletic shorts along with the pair of jeans she was to try on. There was, realistically, nowhere for K.E. to hide something to steal. As to R.S. and C.P., they were store employees continuously captured on the store's multiple security cameras monitoring the public areas of the store. It is unlikely either girl would have hidden an item in her clothing and then walked around the store concealing the item while working next to Kuhn and being monitored by open and obvious security cameras. Furthermore, the camera in the bathroom was not remote-activated and was not continuously recording like the security cameras in the public areas of the store. The only times Kuhn activated the camera were when he had reason to believe the girls entering the bathroom would disrobe to some extent to change clothes or use the toilet, suggesting his purpose was to capture them in a state of undress.

In addition, even Kuhn's own explanation about setting up the camera implicates him. As mentioned, Kuhn's theft-prevention defense was presented through the testimony of the law enforcement officer who interviewed Kuhn. During that interview, Kuhn admitted following the procedure described by the three girls, which is that Kuhn would claim the bathroom needed to be tidied up, go into the bathroom alone, turn on the camera, adjust it, and then leave the bathroom for use by the girls. When asked about the positioning of the camera, Kuhn essentially acknowledged that directing the camera at the toilet would be inappropriate by claiming he did not point it toward the toilet because "he wasn't a

perve." Yet, a review of the three video recordings shows that is exactly what Kuhn did. In each video clip, Kuhn trained the camera so as to allow it to capture anyone seated on the toilet or standing in the area where one would naturally stand to disrobe while changing clothes.

Finally, there is Kuhn's interaction with his two teenage employees, R.S. and C.P. The evidence demonstrated Kuhn took what a reasonable juror could conclude was an inappropriate interest in the details of their personal lives and attempted to engage in sexual banter with them. This interest in the personal lives of teenage girls with sexual overtones was part of the surrounding circumstances the jury could consider in determining whether Kuhn's recording of the girls was sexually-motivated.

Based on Kuhn's conduct, his remarks, and the surrounding circumstances, there is ample evidence to support the jury's conclusion Kuhn acted to arouse or satisfy his sexual desires in recording the three girls. As a result, his sufficiency-of-the-evidence challenge fails.

## IV. Jury Instructions Regarding Knowledge

For his final challenge, Kuhn claims instructional error. "We review challenges to jury instructions for correction of errors at law." *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020). "We review jury instructions to decide if they are correct statements of the law and are supported by substantial evidence." *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996).

As noted earlier, the marshaling instructions for both offenses included elements that Kuhn acted "knowingly." As to the sexual-exploitation-of-a-minor charges, the district court instructed the jury that "'knowingly' means being aware

of the character of the matter." As to the invasion-of-privacy charges, the jury was instructed that "'knowingly' means that the defendant had a conscious awareness of it."

Kuhn asserts these different definitions of "knowingly" were confusing and misleading to the jury. He contends the reference to "conscious awareness" when referring to the knowledge element of invasion of privacy while only requiring "awareness" when referring to the knowledge element of sexual exploitation of a minor could mislead and confuse the jury into believing an "unconscious awareness" was all that was required to satisfy the knowledge element of the sexual exploitation of a minor charges. To avoid this confusion, Kuhn suggests "conscious awareness" should have been used in both definitional instructions. The State counters by pointing out an "unconscious awareness" is oxymoronic, so there was no reasonable likelihood the jury was confused.

We acknowledge Kuhn's claim that prejudice results and reversal is required when jury instructions mislead the jury or materially misstate the law. *State v. Benson*, 919 N.W.2d 237, 241–42 (Iowa 2018). However, while the court must give instructions that fairly state the law as applied to the facts of the case, the court is not required to give any particular form of an instruction. *State v. Booth-Harris*, 942 N.W.2d 562, 581 (Iowa 2020).

We begin our discussion by noting that the challenged instructions are uniform jury instructions promulgated by the Iowa State Bar Association. While we are free to find uniform instructions faulty, we are slow to do so. *See Booth-Harris*, 942 N.W.2d at 580 (noting "we are slow to disapprove of the uniform jury instructions" (quoting *State v. Ambrose*, 861 N.W.2d 550, 559 (Iowa 2015))); *State*

*v. McMullin*, 421 N.W.2d 517, 518 (Iowa 1988) (noting that "[w]hile we normally approve the submission of uniform instructions," we are free to find a "particular instruction faulty"). Here, the difference between the two instructions defining "knowingly" is driven by the fact that a specific statute defines the term for purposes of the sexual-exploitation-of-a-minor charges but not for the invasion-of-privacy charges.

Sexual exploitation of a minor is prohibited by Iowa Code section 728.12. Iowa Code section 728.1 defines certain terms used in chapter 728. *See* Iowa Code § 728.1 (setting forth definitions of various terms "[a]s used in this chapter"). One of those terms is "knowingly," which is defined as "being aware of the character of the matter." *Id.* § 728.1(2). This is the exact definition the district court gave to the jury with respect to the sexual exploitation of a minor charges. The legislature is free to act as its own lexicographer, and when it does so, we are normally bound by the legislature's definitions. *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010). Here, the legislature chose to be its own lexicographer in defining "knowingly" with regard to the sexual-exploitation-of-a-minor charges. The district court's giving of an instruction that exactly tracked the legislature's definition was a correct statement of the law and there was no error in giving the instruction.

In contrast to the sexual-exploitation-of-a-minor charges, the invasion-of-privacy charges are governed by Iowa Code chapter 709, which contains no statutory definition of "knowingly." With no specific statutory definition setting the definition of the term for the invasion of privacy charges, the district court used the general uniform instruction for the definition on those charges. Uniform instruction 200.3 states, "For the defendant to [know][have knowledge of] something means

[he][she] had a conscious awareness that (element requiring knowledge)." Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.3 (2019); *see also State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996) (citing uniform instruction 200.3 with approval); *State v. Simmer*, No. 14-1323, 2015 WL 4642792, at *1 (Iowa Ct. App. Aug. 5, 2015) (same). Appropriately, the district court customized the uniform instruction to adapt it to the facts of this case, resulting in the instruction reading "'knowingly' means that the defendant had a conscious awareness of it" with regard to the invasion-of-privacy charges. This was a correct statement of the law regarding the invasion-of-privacy charges, and there was no error in giving the instruction.

Although the use of an adapted version of uniform instruction 200.3 for the invasion-of-privacy charges resulted in slightly different definitions of the term "knowingly" between the two types of charges, that difference was appropriate due to the legislature's choice to set a specific definition of "knowingly" for the sexual-exploitation-of-a-minor charges while not doing so for the invasion-of-privacy charges. Besides being correct statements of the law, there was no serious risk of misleading or confusing the jury. *See State v. Buman*, ___ N.W.2d ___, ___, 2021 WL 646469, at *4 (Iowa 2021) (considering whether there was "a serious risk of misleading or confusing the jury" in analyzing the propriety of a jury instruction). Kuhn's claimed fear that the jury would be confused into believing only "unconscious awareness" was enough to satisfy the knowledge elements for the sexual-exploitation-of-a-minor charges is not persuasive, as the phrase "unconscious awareness" was not used in the instructions and there is no legitimate risk the jury conjured the phrase themselves, as the concept of

"unconscious awareness" makes little to no sense. Further, the knowledge requirement for the sexual-exploitation-of-a-minor charges was limited to knowingly permitting the girls to engage in nudity and knowing that the nudity would be preserved in a visual medium, both of which were not seriously disputed issues at trial. Kuhn's defense was that he recorded the girls for theft-protection purposes and not for the purpose of arousing or satisfying his sexual desires. There is no serious risk the jury became misled or confused by the slight difference in the definitions of "knowingly" in the instructions.

Finding no merit to the claimed error with the jury instructions, we reject Kuhn's challenge based on instructional error.

## V.    Conclusion

We find sufficient evidence to support Kuhn's convictions for all six charges. We find no error in the definitional instructions given by the district court. As a result, we affirm Kuhn's convictions.

**AFFIRMED.**