# IN THE COURT OF APPEALS OF IOWA

No. 23-1172
Filed June 19, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JOSHUA BENJAMIN KUTCHER,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Story County, Steven P. Van Marel,

Judge.

     A defendant appeals his conviction for attempting to disarm a peace

officer.  **AFFIRMED.**

     Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant.

     Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant

Attorney General, for appellee.

     Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

As he resisted arrest, Joshua Kutcher told Story County Sheriff's Deputy Cody Hamilton: "I got your gun, buddy." The deputy then noticed his weapon was slightly raised from its holster. On those facts, a jury convicted Kutcher of attempting to disarm a peace officer. Kutcher seeks a new trial, contending the jury should have received a specific-intent instruction. Because the crime only required proof of general intent, we find no error.

## I.      Facts and Prior Proceedings

A convenience store clerk called 911 to report a customer had stolen a bottle of alcohol, threatened to kill himself, and drove away in a Volkswagen Passat, heading north from Huxley on Interstate 35. Receiving the dispatch, a state trooper and Story County sheriff's deputies—both driving marked cars—caught up with the Passat near Ames.

The driver—later identified as Kutcher—was weaving between lanes. The trooper activated his lights and sirens, but Kutcher didn't pull over. Instead, he turned onto "the flyover ramp of I-35 and Highway 30." Still pursued by law enforcement, Kutcher stopped about half a mile onto the ramp. The trooper parked in front of the Passat, the deputies behind—boxing in Kutcher.

Because the ramp was about thirty yards above another highway, the officers feared that Kutcher might "attempt suicide by jumping." So they ordered him out of the Passat and onto the ground.[1] Kutcher struggled with the officers as

---

[1] Given the precarious location, officers did not conduct field sobriety testing. But Kutcher admitted that he had consumed methamphetamine before the traffic stop. And later chemical testing revealed the presence of amphetamines and marijuana metabolites in Kutcher's urine sample.

they tried to handcuff him. During the struggle, Kutcher pleaded with the officers: "Let me kill myself. . . . Let me have your gun. I'll reach for it." As they tried to place Kutcher into a squad car, he told Deputy Hamilton: "I got your gun."

The deputy testified: "My weapon would have been about where his hands are, where they were detained behind his back." Realizing Kutcher had access to the firearm, the deputy recalled: "I immediately checked my holster. I put my hand on my holster and examined the condition of it." The deputy saw that "the slide of [his] handgun was back and out of battery." He recalled: "For safety concerns, I stepped away from the situation, stepped away from everybody and cleared my weapon, checked my weapon." The deputy did not believe that the scuffle alone could have dislodged his gun: "I've never had my gun come out of my holster, and I can't think of anybody who has, without some sort of manipulation to it."

The State charged Kutcher with attempting to disarm a peace officer of a dangerous weapon, a class "D" felony, in violation of Iowa Code section 708.13(2) (2023); operating while intoxicated, second offense, an aggravated misdemeanor, in violation of Iowa Code section 321J.2; and eluding or attempting to elude a pursuing law enforcement vehicle, a serious misdemeanor, in violation of Iowa Code section 321.279(1). A jury convicted him as charged. He only challenges the conviction for attempting to disarm a peace officer.

## II.     Analysis

Kutcher claims that his conviction for attempting to disarm a peace officer required proof of specific intent. But the district court declined Kutcher's request for a specific-intent instruction. We review the district court's refusal to instruct the

jury on specific intent for correction of legal error. *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018).

To decide whether a statute requires general or specific intent we start with its language, reading to decipher the provision's "manifest purpose and design." *In re D.S.*, 856 N.W.2d 348, 353 (Iowa 2014) (quoting *State v. Neuzil*, 589 N.W.2d 708, 711 (Iowa 1999)). For the crime of attempting to disarm a peace officer, the legislature chose this language:

> A person who knowingly or intentionally removes or attempts to remove a dangerous weapon, . . . from the possession of a peace officer, . . . when the officer is in the performance of any act which is within the scope of the lawful duty or authority of that officer and the person knew or should have known the individual to be a peace officer, commits the offense of disarming a peace officer.

Iowa Code § 708.13(1).

On appeal, Kutcher focuses on the word "intentionally" in arguing that the court should have instructed the jury on specific intent.[2] But "emphasizing the term 'intent' or 'intentional' in connection with criminal activity 'is merely to state the obvious'—that accidental or unintended acts do not create criminal culpability." *State v. Buchanan*, 549 N.W.2d 291, 293–94 (Iowa 1996) (quoting Kermit L. Dunahoo, *The New Iowa Criminal Code,* 29 Drake L. Rev. 237, 301–02 (1979–80)). When, as here, a statute describes a particular act—with no reference to an intent to do another act or achieve a further consequence—it is a general-intent crime. *Eggman v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981).

---

[2] At trial, the defense argued that because the disarming was an attempt and not a completed offense, it required proof of specific intent. But the court reasoned: "I don't think that's a specific intent crime, even though it is an attempt crime." The defense does not return to this argument on appeal.

By contrast, if the statute refers to a defendant's intent to commit an ancillary act or to accomplish another outcome, the crime requires proof of specific intent. *See id.* For example, assault under Iowa Code section 708.1 is a specific-intent crime. *See State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010). To be guilty of assault, defendants must commit an act that they intend to cause pain or injury to the victim or to result in physical contact that would be insulting or offensive to the victim or to place the victim in fear of physical contact that will be injurious or offensive. Iowa Code § 708.1(1), (2). "This definition clearly requires an intent to achieve some additional consequence so as to qualify as a specific-intent crime under the *Eggman* definition." *State v. Heard*, 636 N.W.2d 227, 232 (Iowa 2001). Similarly, harassment under Iowa Code section 708.7 is a specific intent crime. *State v. Evans*, 671 N.W.2d 720, 724 (Iowa 2003). To be guilty of harassment, the defendant must "purposefully and without legitimate purpose, [have] personal contact with another person, with the intent to threaten, intimidate, or alarm that other person." Iowa Code § 708.7(1)(b).

Unlike the assault and harassment statutes, section 708.13(1) does not include language requiring an intent to achieve anything beyond disarming the officer. "In the absence of such language, we presume the legislature intended to criminalize the proscribed act itself, without further proof related to the defendant's subjective desires." *Buchanan*, 549 N.W.2d at 294. The district court was correct in finding that disarming an officer was a general-intent crime. Because the jury instructions were proper, we deny Kutcher's request for a new trial.

**AFFIRMED.**