# IN THE COURT OF APPEALS OF IOWA

No. 24-0997
Filed July 23, 2025

STATE OF IOWA,
        Plaintiff-Appellee,

vs.

JENNIFER ERIN CARROLL,
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Poweshiek County,
Rose Anne Mefford, Judge.

A defendant appeals her convictions for interference with official acts causing bodily injury and assault on persons engaged in certain occupations. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joshua Henry (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

Jennifer Carroll, faced with an arrest warrant, resisted being taken into custody at her home. During her arrest, an officer was injured. The State charged Carroll with interference with official acts while displaying a dangerous weapon, a class "D" felony in violation of Iowa Code section 719.1(1)(a) and (f) (2023) (Count I); interference with official acts causing bodily injury, a serious misdemeanor in violation of section 719.1(1)(a) and (c) (Count II); and assault on persons engaged in certain occupations, a serious misdemeanor in violation of section 708.3A(4) (Count III). A jury found Carroll guilty on all counts.

On appeal, Carroll challenges the sufficiency of the evidence supporting her conviction under Count II. Carroll also claims her conviction under Count III should merge with her conviction under Count II. Upon our review, we affirm.

## I. Sufficiency of the Evidence

We review sufficiency-of-the-evidence claims for correction of errors at law and will uphold the jury's verdict if it is supported by substantial evidence. *State v. Mathis*, 971 N.W.2d 514, 516 (Iowa 2022). "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In reviewing the sufficiency of the evidence, we will consider all evidence contained in the record, not just the evidence supporting guilt," and we "view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023) (cleaned up).

Carroll challenges the sufficiency of the evidence supporting her conviction for interference with official acts causing bodily injury. For the jury to convict Carroll on that charge, the jury was instructed that the State had to prove the elements below:[1]

> 1. On or about the 13th day of September, 2023, the defendant:
> a. knew Michael McClelland was a peace officer who was attempting to place the defendant under lawful arrest and take her to jail.
> b. knew Michael McClelland was serving or executing an order of a court.
> 2. The defendant knowingly resisted or obstructed Michael McClelland in placing the defendant under arrest and taking her to jail.
> 3. The defendant inflicted a serious injury, a bodily injury or attempted to inflict serious injury.

Carroll challenges only the third element of the offense.[2]

---

[1] The parties agree the marshaling instruction was not the proper instruction for Carroll's charge—interference with official acts resulting in bodily injury, a serious misdemeanor under Iowa Code section 719.1(1)(c). The marshaling instruction referenced two other variations of interference with official acts under section 719.1(1)(d) (an aggravated misdemeanor) and (f) (a class "D" felony). While we do not endorse this instruction, and though the instruction increased the State's burden by adding additional elements to the charged offense, no one objected. Thus, the marshaling instruction became the law of the case. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020).

[2] Essentially, Carroll claims the evidence was insufficient to show she "inflicted" an injury. Carroll also claims "[t]here was no showing of any serious injury, nor of any attempt to inflict anything amounting to serious injury." We observe that the jury was not instructed on the term "serious injury." But the jury was instructed, "The term 'bodily injury' means physical pain, illness, or any impairment of physical condition." Moreover, other than Carroll's conclusory statement regarding serious injury, she does not develop it further. *See State v. Myers*, No. 23-0297, 2024 WL 1551221, at *1 (Iowa Ct. App. Apr. 10, 2024) (declining to consider arguments that are not developed). Here, the jury returned a general verdict. "If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the . . . jury instruction is sufficient to sustain the verdict." Iowa Code § 814.28. "In other words, we are required to affirm if at least one of the alternatives presented to the jury is supported by substantial

Based on the evidence presented at trial, reasonable jurors could have found the following facts.

Three police officers were dispatched to Carroll's residence after receiving a report that the front door had been kicked in at Carroll's apartment. Carroll, who had an active warrant for her arrest, "barricaded" herself in her bedroom by locking the door. She told the officers that she had a baseball bat and tire iron in the bedroom.[3] When the officers eventually broke into the bedroom, Carroll ran into the closet holding a metal baseball bat. Officer Benjamin Smith testified that Carroll "had the baseball bat raised" in a position to swing.

After instructing Carroll several times to drop the bat, Officer Smith went inside the closet, handcuffed Carroll, and removed her from the closet. Police Chief Michael McClelland described Carroll as "flailing or kicking her feet" and having "outbursts." He stated it took two officers to try to control her: "So through most of this, you will see that [Officer Smith] is trying to control the top half of her body, and I'm trying to control her legs." He stated that as they brought Carroll through the hallway, "she was grabbing onto tables and knocking them over, and she has the ability to strike at us if she wants." The officers attempted to get Carroll into the living room to "get more room . . . to . . . maneuver, and get her in a position where we could get her hands under control." Chief McClelland testified:

> I can't pinpoint when exactly my injuries occurred during this with the adrenaline and everything that's going on. I can tell you before we came out of bedroom, she did strike me a few times by

evidence." *State v. Triplett*, No. 19-1902, 2021 WL 3074475, at *1 (Iowa Ct. App. July 21, 2021). We consider the merits of Carroll's claim which are further developed under the instructions given to the jury.

[3] At trial, Carroll testified she had no intention of striking or threatening anyone with the bat.

kicking me, and the scratches that I sustained on my hand and wrist and on my arms probably more than likely happened during this time period.

He estimated it took the officers forty minutes to get Carroll "to come downstairs to the squad car." He confirmed that Carroll "was still actively physically resisting the arrest" during that time. Chief McClelland acknowledged there was a point in the living room that Carroll's father got her to "relax a little bit," but then "she started getting aggravated again" and "she delivered another kick to me." He testified, "I made the decision that we were going to do something at that point, and that's when I told her father he needed to leave."

Carroll's erratic behavior persisted outside in the parking lot before she entered the squad car. There, "[s]he would tense up and resist [the officers] physically," and she also began passively resisting their efforts to get her in the squad car, which Chief McClelland described as "very exhausting to the officers." At one point, Carroll declared, "I'm stronger than you." Chief McClelland testified Carroll kicked him in the legs and stomach. Eventually, the officers tased her. Chief McClelland thought it "could be possible" some of his scratches and bruises were caused outside, but he wasn't sure. He reiterated:

> I am not sure exactly when the injuries occurred during the entire incident. They could have occurred while she resisted, while we were putting handcuffs on her, when she pulled over the furniture in the living room, trying to get her up off the ground, trying to get her hands behind her back. I mean, it could have happened any—Any of those injuries could have happened during that time period.

In contrast, Carroll's father compared his forty-three-year-old daughter's behavior to "an adult tantrum"—"I'm sure a lot of you had young kids, and they have a total meltdown, I call it. . . . You go up and try to console them, and they're

not having it. They're flailing, moving all around. And that's how she was." Carroll's father acknowledged, "She didn't want to be touched, and she did not want to be restrained," but he "did not see her kicking out at anybody." Carroll also testified. She stated she only picked up the baseball bat "to move it" from by the bedroom door. She acknowledged Chief McClelland told her to "Stop kicking me!" but denied kicking or injuring either officer. In contrast, Officer Smith testified that he observed Carroll kicking Chief McClelland "multiple times."

To support her contention on appeal, Carroll focuses on the fact that Chief McClelland and Officer Smith "could not say when the injuries complained of resulted." According to Carroll, there were periods when she resisted passively and also a period of time that she was tased; she argues any injuries sustained during those times "would not qualify" as being "inflicted as a result of active interference, rather than by mere passive resistance or by recklessness." But under these facts and circumstances, we believe this is mainly a difference without distinction. True, "[t]he State was required to show some affirmative action by [Carroll] directed at the officer caused the officer bodily injury." *State v. Dudley*, No. 11-0413, 2012 WL 170738, at *5 (Iowa Ct. App. Jan. 19, 2012). But here, we have little difficulty in determining that sufficient evidence was presented to allow a rational jury to conclude that Carroll inflicted Chief McClelland's injuries when Carroll was actively resisting during the officers' lengthy struggle to arrest her.

Moreover, inconsistency in witness testimony is "for the jury's consideration, and do[es] not justify a court's usurpation of the factfinding function of the jury." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (cleaned up). And the jury reviewed the officers' bodycam videos from the incident, which corroborated the

officers' testimony about Carroll's kicking, flailing, and knocking over tables.[4] "[Q]uestions about weight and credibility of the evidence are for the jury to decide." *State v. Davis*, No. 23-1783, 2024 WL 4966034, at *2 (Iowa Ct. App. Dec. 4, 2024); *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." (cleaned up)).  The jury weighed the evidence and determined that Carroll inflicted the injuries on Chief McClelland while she knowingly resisted or obstructed him in placing her under arrest.  Substantial evidence supports the jury's findings.

## II.     Merger

Carroll next claims the district court should have merged her convictions for interference with official acts causing bodily injury (Count II) and assault on persons engaged in certain occupations, no injury (Count III).  Convictions merge when "a public offense . . . is necessarily included in another public offense of which the person is convicted."  Iowa Code § 701.9.  The first question is "whether it is possible to commit the greater offense without also committing the lesser." *State v. Goodson*, 958 N.W.2d 791, 803 (Iowa 2021) (quoting *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995)).  We then consider "whether the legislature intended multiple punishments for both offenses."[5]  *Id*. at 804 (quoting *Halliburton*, 539 N.W.2d at 344).

---

[4] Carroll testified that she believed the body cam videos had been altered, which testimony the jury was free to reject.

[5] Carroll requests that we "adopt the analysis expressed by former Justice Carter in his special concurrence . . . in *State v. Daniels*," which discussed eliminating the legislative-intent step in merger analysis.  *See* 588 N.W.2d 682, 685 (Iowa 1998).  Even if that request were properly before this court, we would decline to do so, in

The parties seem to agree that the statutory crimes charged, upon which judgment and sentence was entered, do not require merger. We concur. *Compare* Iowa Code § 719.1(1)(a), (c) ("A person commits interference with official acts [resulting in bodily injury] when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . , in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . , or who knowingly resists or obstructs the service or execution by any authorized person of any civil or criminal process or order of any court [which results in bodily injury]."), *with id.* §§ 708.1(2)(a)–(b), 708.3A(4) ("A person commits an assault [against a peace officer] when, without justification, the person does . . . [a]ny act which is intended to cause pain or injury to, or . . . result in physical contact which will be insulting or offensive to [a peace officer], [or] place [a peace officer] in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.").

Instead, Carroll claims the crimes marshaled in the jury instructions require merger. *See State v. Greenland*, 17 N.W.3d 347, 355 (Iowa 2025) ("In determining whether one offense is necessarily included in another public offense, we look to the elements of the offense as marshaled."). The marshaling instruction for Count II is set forth above. To convict Carroll of interference with an official act causing injury under Count II, the jury was instructed the State had to prove:

> 1. On or about the 13th day of September, 2023, the defendant:

accordance with the supreme court's more recent dialogue. *See, e.g.*, *State v. West*, 924 N.W.2d 502, 512 (Iowa 2019) (declining to "abandon our two-step approach to Iowa Code section 701.9 as suggested by Justice Carter").

a. knew Michael McClelland was a peace officer who was attempting to place the defendant under lawful arrest and take her to jail.

b. knew Michael McClelland was serving or executing an order of a court.

2. The defendant knowingly resisted or obstructed Michael McClelland in placing the defendant under arrest and taking her to jail.

3. The defendant inflicted a serious injury, a bodily injury or attempted to inflict serious injury.

To convict Carroll of assault on persons in certain occupations under Count III, the jury was instructed the State had to prove:

1. On or about the 13th day of September, 2023, the defendant did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive or place Michael McClelland in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to Michael McClelland.

2. The defendant had the apparent ability to do the act.

3. That Michael McClelland was acting as a peace officer.

According to Carroll, the first element of Count III—the assault element—"is necessarily subsumed" in elements one and three of Count II because "one who knowingly resists or obstructs while inflicting or attempting to inflict injury . . . necessarily commits an assault." The State disagrees, pointing out that the interference charge under Count II "does not require specific intent to inflict or attempt to inflict injury, it only requires knowing resistance or obstruction," whereas the assault charge under Count III "requires specific intent that the act against the officer will cause pain or injury or result in physical contact that is insulting or offensive or cause fear of such to the qualifying individual."

The question on appeal is whether Carroll could knowingly resist or obstruct and inflict or attempt to inflict injury without also committing an assault. *See State v. Hickman*, 623 N.W.2d 847, 850 (Iowa 2001) ("If the greater offense cannot be

committed without also committing the lesser offense, the lesser is included in the greater.  We call this the 'impossibility' test.").

We conclude the State's position is more persuasive that it is "not impossible" to commit Count II without also committing Count III under the instructions marshaled by the court.  "Assault contains specific intent elements because a defendant commits assault with the intent 'to cause pain or injury to the victim or to result in physical contact that would be insulting or offensive to the victim.'"  *State v. Graham*, No. 21-0252, 2022 WL 1100920, at *5 (Iowa Ct. App. Apr. 13, 2022) (quoting *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010)).  In contrast,

> the requirement that the defendant "knowingly" resist or obstruct an officer [does not] implicate specific intent. . . .  The requirement that a defendant act knowingly "is separate and apart from whether a defendant acted intentionally or deliberately, as well as whether a defendant intended any specific result from the commission of his acts."

*State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996) (citations omitted).  In other words, "the crime of interference with official acts . . . is a general-intent crime," *id*., because it "does not include language requiring an intent to achieve anything beyond [resisting or obstructing] the officer," *State v. Kutcher*, No. 23-1172, 2024 WL 3050729, at *2 (Iowa Ct. App. June 19, 2024).  *But cf. State v. Hickman*, 623 N.W.2d 847, 852 (Iowa 2001) (analyzing whether criminal trespass is a lesser included offense of burglary and concluding the words "purposely" and "intended" "convey the same thought: the defendant intended to cause serious injury to the victim (specific intent), not just to do the act that resulted in serious injury (general intent)").

Accordingly, we conclude the crime of assault on persons in certain occupations is not necessarily included in the crime of interference with official acts causing injury, as marshaled here.[6] *Accord State v. Boner*, No. 00-1020, 2001 WL 1219303, at *3 (Iowa Ct. App. Oct. 12, 2001) (noting the defendant "could have knowingly interfered with [the officer's] duties and, in the course of doing so, seriously injured him without specifically intending to inflict a serious injury. Therefore, [the defendant] could have committed the interference crime without also committing the assault crime, which, by its terms, requires proof of specific intent"). The convictions do not merge.

We affirm Carroll's convictions and sentences.

**AFFIRMED.**

---

[6] Carroll further maintains "[t]here is no clear indication of legislative intent against merger or combination of the offenses"—a claim we need not address in light of our conclusion on the first step of the merger analysis. And even if we were to consider the purposes of these statutes, we believe the legislature intended multiple punishments. One statute focuses on resistance or obstruction of an official's exercise of lawful authority. *See* Iowa Code § 719.1(1)(a); *Buchanan*, 549 N.W.2d at 294 ("The purpose of criminalizing conduct that interferes with official police action is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance."). The other targets assaults on individuals in certain occupations. *See* Iowa Code § 708.3A(4); *Graham*, 2022 WL 1100920, at *5 (discussing indicators of legislative intent by the codification of prohibition on assaults on "a certain subset of individuals" and by setting forth enhanced penalties for such assaults). We also observe the penalties for both are the same—serious misdemeanors—and the penalty for the alleged greater offense does not exceed that of the alleged lesser offense. *See Goodson*, 958 N.W.2d at 804 ("[W]here the greater offense has a penalty that is not in excess of the lesser included offense, a legislative intent to permit multiple punishments arises. Otherwise, there would be little point to the greater offense." (citation omitted)).